611 A.2d 715

**Lona MILLARD, Administratrix of the Estate of Michael A. Millard, Deceased, Appellant,**

**v.**

**John OSBORNE and Thiel College**

**v.**

**LAMBDA CHI ALPHA, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed June 17, 1992.

Petition for Allowance of Appeal
Denied Oct. 28, 1992.

476

Michael E. Dunlavey, Erie, for appellant.

Roger H. Taft, Erie, for Thiel College, appellee.

Before CAVANAUGH, WIEAND and HESTER, JJ.

CAVANAUGH, Judge:

This is an appeal from an order granting summary judgment in favor of defendants Thiel College and Lambda Chi

Alpha, Inc. For the reasons stated hereinafter, we affirm the order of the lower court.

The facts of this tragic case are as follows. The decedent, an eighteen year old freshman at Thiel College, was present at the Lambda Chi Alpha fraternity house socializing with some fraternity members in the early afternoon prior to a homecoming party scheduled for that evening. The party had been permitted by the college according to its stated alcohol policy, and was scheduled to occur from 8:00 pm to 1:00 am, several hours after the decedent's visit to the fraternity house. However, the beer for the upcoming party had been delivered to the fraternity house at approximately midday.

While at the house, the decedent was seen drinking beer. At approximately 7:30 p.m. on that same date he was driving his motorcycle eastbound on Route 322 (witnesses uniformly stated his headlight was off or very dim) in Crawford County when defendant John Osborne, driving westbound along that same road, attempted to pass the car in front of him. The resulting head-on collision killed decedent, and a subsequent analysis of his blood yielded a blood alcohol content level of .133.

The administratrix of decedent's estate filed suit against John Osborne and Thiel College. Defendant Thiel College joined as additional defendant Lambda Chi Alpha Fraternity.[1] The claim against Thiel College was alleged in paragraphs 26–28 in the plaintiff's complaint as follows:

26. That the actions of Thiel College in sanctioning, authorizing and allowing beer parties to take place on their campus with their implicit and, in this particular case as alleged, expressed approval and knowledge constitutes gross negligence.

27. That the fatal injuries suffered by Michael A. Millard were a foreseeable consequence of the negligent actions of the administration of Thiel College and their

---

1. The negligence claims against John Osborne, relating to his operation of a motor vehicle, are not the subject of this appeal and are not addressed.

grossly negligent policies of allowing the consumption of alcoholic beverages on their campus and, in fact, their positive policy allowing such consumption, knowing full well that the vast majority of their students on the campus are not of legal age to consume alcoholic beverages.

28. That the negligent actions of Thiel College consisted of at least the following:

a. Allowing alcoholic beverages to be consumed on their campus;

b. Openly advocating the policy of consumption of alcoholic beverages;

c. Failing to monitor or control the consumption of alcoholic beverages on its campus, particularly through its agents, the members of Lambda Chi Alpha fraternity;

d. Failing to have adult members of the faculty or administration present to monitor the consumption of alcoholic beverages and insure that no one under the age of 21 was consuming alcoholic beverages which were allowed on the campus by the administration; and

e. Failing to prevent minors, particularly, the decedent, Michael A. Millard, from consuming alcoholic beverages which, in this particular case, may have contributed to his demise.

29. That as a direct and proximate result of the negligence of Thiel College, its administration and/or employees, Michael A. Millard did consume alcoholic beverages at the Lambda Chi Alpha [house] on October 18, 1985 and was, subsequently, involved in a fatal motorcycle/vehicle accident as hereinbefore stated, resulting in his death.

30. That the Plaintiff, upon information and belief, believes that the consumption of alcoholic beverages at Thiel College may have contributed to the fatal automobile accident in which Michael A. Millard was involved.

Relying on our supreme court's decision in *Alumni Association v. Sullivan*, 524 Pa. 356, 572 A.2d 1209 (1990) which refused to extend "social host" liability to include persons

other than those who knowingly furnished alcohol to minors, the trial court granted defendants Thiel College and Lambda Chi Alpha's motion for summary judgment, reasoning that there was no evidence to show that:

the defendants' knowingly or intentionally did serve, supply, aid in, or abet in any way the consumption of alcohol by minors at the fraternity party on the afternoon of Mr. Millard's death.

See also *Jefferis v. Commonwealth*, 371 Pa.Super. 12, 17, 537 A.2d 355, 358 (1988).

The plaintiff appeals that decision, reasoning that there was substantial evidence to support a finding that appellee-defendants rendered substantial assistance to the decedent in his consumption of alcohol, and that appellee Thiel College failed to exercise substantial control over the conduct of its students, as it purported to do, in violation of its duty to the students. Much of appellant's argument focuses on alleged policy shortcomings and administrative inadequacies and fails to relate to the real issue of what the appellees did or failed to do on the day of this fateful accident.

We address the substantial assistance issue first. Appellant vigorously asserts that the school aided and assisted the decedent in his consumption of alcohol by its policies and actions. More specifically, she contends that the Lambda Chi house was owned by the school (leased for one dollar per term to the fraternity), and the school maintained absolute control over the house according to the lease. Further, appellant asserts although Thiel College had a longstanding alcohol policy, which policy gave rise to a duty to control alcohol on its campus, and infractions of it received little or no discipline.

Appellant points us to the additional fact that, although 70% of campus was under the legal drinking age, Lambda Chi was allowed to build a bar for the service of alcoholic beverages in the basement of the house. Appellant claims that all these factors together constitute aiding the decedent minor in his consumption of alcohol, and imposing civil liability upon Thiel College would therefore be proper.

As a preliminary matter, we address the standard of review to be used in a case where the lower court has granted a motion for summary judgment.

As an appellate court, we are bound to consider certain principles when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 557 A.2d 1064 (1989). The trial court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance Co.*, 380 Pa.Super. 167, 551 A.2d 283 (1988). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *see Penn Center House Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989). The court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in pleadings which are uncontroverted. *Overly v. Kass*, 382 Pa.Super. 108, 554 A.2d 970 (1989). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 549 A.2d 1311 (1988). *Goldberg v. Delta Tau Delta*, —— Pa.Super. ——, —— – ——, 613 A.2d 1250, —— (Superior Court 1992).

Our review of the uncontroverted evidence indicates that Thiel College had an alcohol policy set forth in some detail. In certain aspects of regulation the college assumes specific responsibility—periodically checking lists to ensure compliance with attendance numbers and fire codes, periodic inspections and recordation of beer keg serial numbers to ensure limited amounts of alcohol, and shutting down parties after the scheduled closing time of 1:00 am.

However, in the stated policy handbook given to students, it is clear that the college also accorded certain amounts of responsibility to college students as intelligent, responsible members of society. The host of the function is charged with ensuring that the laws of the Commonwealth of Pennsylvania are complied with.[2]

**2.** The following are excerpts from the Thiel College Handbook:

Thiel College believes that its students are mature persons who are attending an institution of higher learning for serious purposes. Therefore, the college believes that all students should accept responsibility for their behavior. (Handbook, at 32).

... violations which will result in some form of sanction ... [include] ... [t]he possession, transportation, consumption or sale of alcoholic beverages on college property, except as is stipulated in the college's alcoholic beverages policy. (Handbook, at 35).

**ALCOHOLIC BEVERAGES. Consumption**—Only students who are 21 years of age and their guests who are 21 years of age may have possession of and consume alcohol in students' rooms on campus. (Handbook, at 44).

**Alcohol Policy Implementation**—The use of alcohol on the Thiel campus is a privilege. It is not a given right. Furthermore, inappropriate behavior (i.e. disorderly conduct, intoxication, harassment) as a consequence of alcohol consumption will not be tolerated. This type of behavior will be considered as a violation of the student conduct code and result in appropriate sanctions. Thiel college supports the laws of the Commonwealth of Pennsylvania. The responsibility of upholding these laws also rests with the student.

The use of alcohol at organized functions on weekends will be permitted only in recreation rooms and upon registration and approval of the Student Development Services Office. At other times, there shall be no alcohol consumption in the common areas of the campus.

Specific adherence is expected to the following:

1. All parties on campus will be "closed". This means that all parties will be by invitation, and only those students who are invited may attend.

2. Total number of hosts and invited guests will not exceed the limit established by law relating to capacities of rooms. This means invitations to parties in a fraternity recreation room will not exceed 150. Invitation to parties requested for recreation areas of other residence halls will be limited to the number authorized by fire laws for those areas.

3. No all-campus or open to the public parties are to occur. Off-campus guests will be by invitation only and must be hosted by Thiel student. Invitation lists will include this information.

4. It is understood that charging at the door or selling tickets is unacceptable behavior.

5. All groups requesting an official function will develop an invitation list and will share that list with the Dean's Office or his staff upon request.

Depositions of the students involved with the planning of alcohol-related events reveal that the school did enforce the regulations at least on a partial basis.[3]

The most recent pronouncement of the law of social host liability from our supreme court was in *Alumni Association v. Sullivan, supra,* in 1990, in a similar case. There, an eighteen year old freshman at Bucknell University at-

6. Beer and wine in appropriate amounts will be permitted at organized alcohol events. **The use of hard liquor is prohibited.**

7. The quantity of beer and wine available will be determined by the approved number of participants and the space utilized for the function.

8. No more than three one-half kegs will be approved for any one function. Sponsors of functions where alcohol is approved **will** provide a non-alcoholic beverage (as per function form) **other than** soda machines.

9. Serial numbers of beer kegs **will** be registered with security, and are subject to periodic inspection throughout the course of the event.

10. All alcohol-related events will end at 1:00 a.m. Areas approved for such events must be cleared by that time. Functions will "wind down" one-half hour prior to the stated time for ending. This will include turning off the sound system and discontinuing further service of beverages. For functions ending at 1:00 a.m., "wind down" time is 12:30 a.m.

11. Sponsors of functions will be required to monitor access and will maintain the invitation log for the event. Sponsors will be held accountable for appropriate monitoring.

12. Security staff and staff of the Dean's Office will monitor functions on a regular basis. Groups requesting a function agree to **full cooperation** in that monitoring.

13. The persons requesting an alcohol-related event are responsible for the conduct of their guests and for seeing that state laws are upheld.

14. All registration for any alcohol event will be submitted at least three days in advance.

As with all events on campus, students shall demonstrate appropriate behavior. Failure to meet with these standards of behavior, and violations of the alcoholic guidelines, will result in disciplinary action. The alcohol policy is subject to continued review and possible revision. (Handbook, at 45–46).

The legal drinking age in Pennsylvania is 21 years of age, and like any other state law, this one applies here on campus. The whole community has an interest in abiding by this law, not only to protect individuals from legal action, but to allow the college the freedom to make alcoholic beverages available on campus at appropriate times and places. (Handbook, at 52) (All emphasis in originals).

3. See, *e.g.,* Deposition of Drew Hicks, at 13–16, Deposition of Dale Nye at 14–17, and Deposition of Mark Adams, at 16–17 and 21.

tended a party at his dormitory where he was served alcohol. He then attended a party at a fraternity at the fraternity house where he again was served alcohol. A fire broke out which damaged the neighboring fraternity house. The freshman and a companion were sued for $400,000 in damages for allegedly negligently starting or failing to control the fire, they joined the party host fraternity (Kappa Chapter and National) and Bucknell University as defendants, alleging that the additional defendants were negligent in serving alcohol to minors, and this negligence proximately caused the conduct resulting in the fire.

The students alleged in that case that this court erred in refusing to extend the rationale found in *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983) to cover such a situation. In *Congini,* the Pennsylvania Supreme Court noted that for liability to attach to a social host, he must have "knowingly furnished" alcohol to a minor. In *Alumni Association,* this court and subsequently our supreme court declined to extend that rationale to include a situation where the social host "should have known" that alcohol was being provided on their premises.

The Third Circuit, in *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150 (3d Cir.1986), chose to take a somewhat different approach. When confronted with the defense argument that alcohol was not furnished to the minor, that court noted that a requirement of physically handing a beer to a minor did not reflect the principle announced in *Congini.* The third circuit there interpreted the Pennsylvania Supreme Court's test of "knowingly furnished" as enunciated in *Congini* to include aiding, assisting, or attempting to aid or assist someone in allowing the consumption of alcohol by a minor.

■ Appellant's claim is also founded on the assertion that that the national fraternity rendered substantial assistance in consumption of alcohol by a minor in that it counseled the chapter how to conduct parties and avoid civil liability, and that the school assisted in its haphazard enforcement of the alcohol policy which encouraged drinking

by minors, allowing parties to include alcohol, and allowing the installation of a bar in the basement of a fraternity house on campus, belonging to the school, where the campus was 70% under the legal age for drinking.

The evidence does not support appellants claim *vis a vis* the national fraternity. In fact, the national fraternity counsels *against* the use of alcohol.[4] The appellant points us to a statement by one fraternity member that the national fraternity counseled the chapter to avoid potential liability by not having "open" parties. Even this statement indicates that the national fraternity counseled *away* from access to alcohol by suggesting that the chapter never have any open parties, where alcohol access was unrestricted.

Furthermore, the national fraternity is not in a position to control the action of its chapters.[5] It is based in Indiana,

---

**4.** Lambda Chi Alpha's General Assembly passed the following resolution in 1984:

### POLICY ON ALCOHOLIC BEVERAGES

Recognizing its responsibility for the social well-being and welfare of its members; and with the objective that the social atmosphere and environment of its chapters be one in harmony with the spirit and ideals of this Fraternity; Lambda Chi Alpha Fraternity adopts this policy related to the use of alcoholic beverages.

(1) The possession, consumption, and distribution of alcoholic beverages on the premises of any chapter or colony or at any entertainment or function given in the name of or for the benefit of Lambda Chi Alpha Fraternity, shall not be in conflict with institutional, state or local regulations and policies.

(2) There shall be no illegal sale of alcoholic beverages by a chapter or colony to the general public.

(3) *There shall be no social activities which are classified as "open parties" that are characterized by unrestricted and/or public access to alcoholic beverages.*

(4) Chapters are directed to develop a comprehensive alcohol awareness program of education on the responsibilities and liabilities of alcohol possession, consumption, and distribution. (Emphasis Added).

**5.** The Lambda Chi Alpha Fraternity is structured in two levels. The local chapter is responsible for functioning at a local level, planning chapter functions and running the chapter operations. The National level is a separate Corporation, based in Indiana which generally oversees the chapters at different universities across the country, keeping "ritualistic" conformity and operating pursuant to a constitution which states the purpose as, *inter alia,* maintaining an order whose "ritual and symbolism shall be secret", "encouraging and in-

and Thiel College is in Greenville, Pennsylvania. In addition to the lack of geographic proximity which would defeat any attempt at day-to-day control, we note our supreme court has unequivocally stated that a National Fraternal Organization is not under a duty to control the activities of its members.

It is equally clear appellee Sigma Chi Fraternity is an inappropriate body from which to require the duty urged by appellant. By definition such organizations are based upon fraternal, not paternal, relationships. National organizations do not have the ability to monitor the activities of their respective chapters which would justify imposing the duty appellant seeks. The national organization in fraternal groups has only the power to discipline an errant chapter after the fact. It does not possess the resources to monitor the activities of the chapter contemporaneous with the event. Fraternal organizations are premised upon a fellowship of equals; it is not a relationship where one group is superior to the other and may be held responsible for the conduct of the other. From this factual matrix, there is no basis in the relationship to expand the liability of the national body to include responsibility for the conduct of one of its chapters. *Alumni Association, supra*, 524 Pa. at 365, 366, 572 A.2d at 1213.

■ The school's policy also counsels away from use of alcohol. The appellant's complaint that allowing alcohol on campus when 70% of the students are underage is unpersuasive. The school policy handbook notes that:

[t]he legal drinking age in Pennsylvania is 21 years of age, and like any other state law, this one applies here on

spiring fraternal feeling and cooperation", "forming unselfish and loyal friendships among its members", and to provide "better government" and promote "more perfect unity" (Preamble and Article II of Lambda Chi Alpha's Constitution, at 1–2). When plaintiff served interrogatories, the national organization answered them and assumed the role of defendant in this case. It is important to note that the analysis in this decision is directed to the fraternity at the national level, and we offer absolutely no opinion as to the liability of the local chapter for the events in question, as summary judgment was granted to the national fraternity, *Lambda Chi Alpha, Inc. only.*

campus. The whole community has an interest in abiding by this law, not only to protect individuals from legal action, but to allow the college the freedom to make alcoholic beverages available on campus at appropriate times and places. (Handbook, at 52).

That the college allows that portion of students who are of legal drinking age to consume alcohol is not evidence that it aided or encouraged underage drinking. The evidence supports the opposite conclusion, and we reject appellant's contention in this regard.

■ We also find unpersuasive the argument that the college, as landlord, allowing the local fraternity chapter to build a bar in the basement, and failing to monitor the consumption of alcohol, breached a duty to the students and decedent and was negligent. No representatives of the college were present when decedent was drinking at the fraternity house, and it cannot be shown that the college assisted in the procurement or distribution of the alcohol in any way. Nowhere can be found active encouragement by the college.

The alcohol in this case was not served from the fountain in the basement, it was served from a keg delivered for a party scheduled to begin several hours later. This was clearly a violation of the school's alcohol policy, and not, as appellant asserts, sanctioned by the administration of Theil College. Therefore, the trial court was correct in granting motion for summary judgment on this issue, as neither the pleadings nor the evidence support a theory of liability under Pennsylvania law.

■ The final issue raised by appellant in this case is that the appellee Thiel College assumed a special duty to control the behavior of its students by implementing an alcohol policy and undertaking to enforce it. Our supreme court has addressed the thorny issue of college control of its students in *Alumni Association, supra.* In holding that a university was not under an obligation to control the activities of its students, the court stated as follows:

Appellant's view would have us impose upon appellees a custodial relationship with University students. Clearly, in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university. Instructive on this point are the observations of Judge Aldisert in *Bradshaw v. Rawlings,* 612 F.2d 135 ([3d Cir.] 1979).

.    .    .    .    .

> Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. Whatever may have been its responsibility in an earlier are, the authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students. *Id.* at 138, *Alumni Association,* 524 Pa. at 364, 365, 572 A.2d at 1213.

We find this reasoning applicable. A college may not "control" the behavior of its students as may have been possible in the past. The fact that an alcohol policy was implemented to give the college the ability to allow alcoholic beverages to those who were of legal drinking age does not give rise to a special duty to control the actions of those students who are determined to acquire intoxicating beverages, even though they are underage.

Furthermore, when we examine the facts of this particular instance, it becomes abundantly clear that no amount of "control" or "supervision" by the college during the party would have prevented the decedent from imbibing beer. The party was scheduled to begin at the Lambda Chi Alpha house in the evening—from 8:00 pm to 1:00 am.[6] As fate would have it, the kegs arrived shortly after noon, the resident students decided to tap them earlier than allowed, and sit in a hot tub they had specially set up for the homecoming party. The decedent was seen drinking beer at the house before he left on his motorcycle. Shortly thereafter, he was fatally injured in a collision with an

6. According to the form filed with the Thiel College administration by the local fraternity chapter.

automobile. This entire series of events occurred *before the party had begun.* Even had the College been vigorously checking identification at the function, this tragedy would not have been avoided.

Therefore, as there was no issue of material fact to be resolved, the defendants were entitled to judgment as a matter of law, and we reject this final claim.

Order affirmed.