**Lora Ann BOOKER, Plaintiff,**

v.

**LEHIGH UNIVERSITY,**
**et al., Defendants.**

**Civ. A. No. 90–5298.**

United States District Court,
E.D. Pennsylvania.

Aug. 3, 1992.

Evan Edward Laine, Law Offices of Evan Edward Laine, Philadelphia, Pa., for Lora Ann Booker.

Jered L. Hock, Edward E. Knauss, IV, Metzger, Wickersham, Knauss & Erb, Harrisburg, Pa., for Lehigh University.

Richard F. Stevens, Allentown, Pa., for St. Luke's Hosp.

Shawn P. Phillips, Hourigan, Kluger, Spohrer & Quinn, Allentown, Pa., and Joseph A. Quinn, Jr., Hourigan, Kluger, Spohrer & Quinn, Wilkes–Barre, Pa., for Dr. Edward Salgado.

Daniel F. Ryan, III and Timothy R. Lawn, O'Brien & Ryan, Plymouth Meeting, Pa., for Dr. Eric Dornblaser.

### MEMORANDUM

TROUTMAN, Senior District Judge.

This matter is now before us on defendant Lehigh University's motion for summary judgment. The issue is whether under the law of Pennsylvania a university may be held liable to one of its underage students when, as a result of her own self-indulgent behavior, she becomes inebriated at on-campus fraternity parties and thereafter injures herself in a fall. We are thus herein deciding the liability of Lehigh University only. Our jurisdiction is based upon diversity, 28 U.S.C.A. § 1332, and venue is proper since the events occurred in, and the defendants reside in, this district. 28 U.S.C.A. § 1391. For the reasons which follow, we conclude that Lehigh University is not liable for the plaintiff's injuries.

## I. BACKGROUND.[1]

### A. The Night of the Incident.

On November 18, 1988, plaintiff was 19 years and 11 months of age, and was a sophomore at Lehigh University ("Lehigh"). Sometime about 6:00 p.m. plaintiff attended a cocktail party at the Alpha Sigma Phi fraternity. She stayed until approximately 8:00 p.m. During these two hours she consumed four or five vodka collins drinks. She then left the party and returned to her sorority room to change for the next party. At this time she already felt "buzzed". At about 9:00 p.m. she drove with some of the older girls from her sorority up "the hill" to a party at Sigma Alpha Mu fraternity. While at this party, plaintiff drank one bottle of beer and two six inch high plastic cups filled with grain punch. She filled the cups herself from a big vat. At neither of these parties was plaintiff asked to show any identification, nor did she observe any Lehigh University or private security guards. She and a group of friends left this party sometime before midnight, and walked about five minutes to attend a party at Kappa Sigma fraternity. Plaintiff stayed at Kappa Sigma only about one half hour and did not drink any alcohol while there. She and a friend then walked to Sigma Chi fraternity, about a five minute walk. She did not consume any alcohol there either and stayed only about ten minutes before leaving to walk back to her room. By this time she felt drunk and left because it was time to go home. Plaintiff admitted that she probably drank more than usual since it was Lehigh–Lafayette Weekend, the weekend of a football game between these two old rivals.

She walked back to her room alone by following the road to a point in front of the Alpha Tau Omega fraternity house. At this point she decided to leave the road and walk down a "trail" to the next level of the campus since it was a short cut to her sorority. To traverse this trail, part of the student named "Ho Chi Minh" trail, one must walk across rocks, and in addition, the trail does not have any steps, is not lighted, and is, apparently, a student created shortcut. Students normally do not walk down the trail because it is too steep. For this reason, plaintiff herself had never before attempted to walk down the trail.

Plaintiff does not remember anything after she left the road to walk down the trail, but at some point on the trail she must have fallen and struck her head. The next thing plaintiff remembers is finding herself at the bottom of the trail behind a dormitory, brushing the dust off herself. She then managed to go to the dorm to get assistance from persons inside. A boy from the dorm walked with her to her sorority house where a couple of her sorority sisters took

---

1. Since there are other defendants remaining, at this point we explicitly state that the following recitation of the facts is only for the purpose of this motion and these have not been established as "the facts of the case".

her immediately to defendant St. Luke's Hospital since she had a cut above her eye which was very bloody. This was approximately 2:00 a.m.

The next day, Saturday, plaintiff's father came to take her home. For the rest of the weekend plaintiff suffered from blurred vision, headaches, could not walk or sit up, and did not get a sound sleep. Ultimately, on Monday, plaintiff's pain greatly increased whereupon she was given a CAT scan which revealed a hematoma on her brain and she was operated on immediately. Lehigh was not involved in any respect with the treatment of plaintiff's injuries.[2]

### B. Lehigh University's Social Policy re: Alcohol.

In the Summer of 1988, Lehigh published a booklet entitled "A Guide to the Social Policy". In this guide, the policy of Lehigh regarding alcohol use is outlined. Under article D, "Social Policy Rules", the first issue addressed is the "Distribution of Alcohol". The Social Policy states *"Party hosts* are responsible for ensuring that only persons 21 years of age or over are served alcoholic beverages." (Social Policy § D.1.a., attached to Plaintiff's Brief in Opposition (Doc. # 26), Exh. "A") (emphasis added.) *"Party hosts* must hire a uniformed security guard to check identification at the entrance to the room where alcoholic beverages are served." (Social Policy § D.1.c.1.) (emphasis added.) *"Hosts* must ensure that no one under the age of 21 possesses or consumes alcohol at the party." (Social Policy § D.1.d.) (emphasis added.) Under section 3, "Party Registration", the Social Policy states, *inter alia,* "Registration of the party does not constitute University approval of such events." (Social Policy § D.3.) This same language also appears in all capital letters on the registration form itself. (*See,* Brief in Opposition, Exhs. "B" and "C".)

John Smeaton, Assistant Vice President for Student Affairs, Lehigh's designated deponent as the person responsible for, *inter alia,* student social affairs outside the classroom, testified that Lehigh was not blind to the fact that underage drinking occurs on college campuses, with Lehigh being no exception. Recognizing this, Lehigh revised and updated its Social Policy in an attempt to alter the situation. The Social Policy, while outlining additional responsibilities that the students should observe for the sake of the overall campus environment, essentially tracked state law that a person must be 21 to consume alcohol. In addition to revising its Social Policy regarding alcohol to improve the campus environment, Lehigh hired a person to provide counselling and education regarding drug and alcohol use and abuse. (Depo. of John Smeaton (Doc. # 25) at 74)

Mr. Smeaton testified that "the spirit of the policy was, or the intention of the policy was that you must be 21 to have access to the room where alcohol is being served." (*Id.* at 22) Lehigh's concern was "to provide a healthy, positive social environment for [its] students." (*Id.* at 74) This concern was not just for underage students, but all students. The Social Policy is an educational rule designed to educate the students, to maximize the social environment and minimize problems. It is designed to make the students think about what they are doing. (*Id.* at 49)

As noted above, one of the requirements that students were to observe under the Social Policy was to register any parties. Registration of parties was required simply to provide information to the student life office. (*Id.* at 11) It also serves the purpose of reminding the students[3] of the rules and regulations attendant to holding parties; it is a check list to remind the students to follow those rules.

---

**2.** We also note that plaintiff acknowledged in her deposition that her parents knew that she drank and that her mother did not like it. Nowhere in the record, however, does it appear that her parents ever complained to Lehigh about this. Of course, as an emancipated adult, *i.e.,* over eighteen, her parents could not control plaintiff's decision to drink alcohol or be responsible therefore.

**3.** Who after the first day, no doubt, have put aside their student handbooks and the Social Policy booklet.

Among the points plaintiff raises, she cites that the registration forms for the parties where she drank alcohol are blank at the space for listing the security guard hired to check identification. It was explained by Mr. Smeaton that this was because the forms are due in his office by 4:00 p.m. on the Wednesday before the party. Security guards would not be hired, and thus known to the host, before that time. Lehigh, however, assumed that guards would be in place "[b]ecause [it] assumed [its] students would follow the rules and regulations" since "it's an expectation that [Lehigh] has for them." (*Id.* at 32) Plaintiff also points to the role of Lehigh security guards, as they have the power to enter the fraternities to check on compliance with Lehigh's regulations. Plaintiff argues that these Lehigh security guards, in fact, have such a duty under the Social Policy. Mr. Smeaton testified that the security guards are to assist the party host. The Social Policy affirms that it is the party host who is responsible for compliance with the Social Policy, not Lehigh.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT.

Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

To defeat summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable factfinder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358 (3d Cir.1987).

If the movant succeeds in demonstrating that there are no genuine issues of material fact in dispute, or, as in this case when the material facts are essentially undisputed, the Court must then be satisfied that the moving party is entitled to judgment as a matter of law.

## III. DISCUSSION.

Plaintiff's argument is that Lehigh is liable since it (1) undertook a duty to protect underage persons like herself when it promulgated the Social Policy, and that it was negligent by failing to ensure, through its own security guards, compliance by the party hosts with the Social Policy, and (2) is the landlord of the fraternities where plaintiff partook in underage drinking, but failed to control the fraternities.

It [is] the allegation of plaintiff ... that Lehigh University assumed the duty of monitoring these parties since Lehigh University knew of a pressing social problem of underage drinking occurring on campus. * * * Lehigh University took on the responsibility of not only creating rules and regulations, but of enforcing them through the use of University security guards who had the responsibility to check and determine whether or not private security guards were being used and to close the parties that did not comply. Lehigh negligently enforced its own rules and regulations by allowing the illegal parties to go on basically unfettered.

(Plaintiff's Brief in Opposition (Doc. # 26) at 6–7.) Although plaintiff states that the Social Policy establishes a duty upon Lehigh to enforce its provisions, we do not find such a duty. We conclude that the Pennsylvania courts, faced with the current matter, would not hold that the Social Policy created a special relationship between plaintiff and Lehigh University.

Plaintiff's argument, despite her contention that Lehigh is liable under Restatement (2d) Torts § 323 and § 318, is in fact that Lehigh is responsible for the actions of its (underage) students *in loco parentis;* that the Social Policy is no more than a detailed written promise to act *in loco parentis*. Plaintiff argues that the Social Policy amounts to a duty on the part of Lehigh to "control these parties through [its] po-

lice function and that defendant failed in this undertaking and, thus through this failure is responsible to the plaintiff for injuries suffered." (Brief in Opposition at 9.) Plaintiff's Restatement claim is that Lehigh, through its Social Policy, planned and controlled the parties, (See e.g., Brief in Opposition at 13); an *in loco parentis* claim would be that Lehigh planned and controlled the parties. Inserting the matter of the Social Policy makes no difference and we do not believe that a Pennsylvania court would find otherwise. Since plaintiff is in fact arguing for accountability *in loco parentis, Alumni Association v. Sullivan,* 524 Pa. 356, 572 A.2d 1209 (1990) and similar cases are controlling.[4]

At this point, we should explain the interrelationship between plaintiff's adult, minor, and underage status. Plaintiff, being over the age of eighteen at the time of the incident, was an adult. For all facets of life, other than purchasing and consuming alcohol, she was an adult. As to purchasing and consuming alcohol, she would be considered by many to be a minor, *i.e.,* she was legally incompetent to participate in such activities. We believe that a better description of this status is to call her "underage". There can be no question that she was competent, legally or otherwise, to decide, *inter alia,* whether to break the law, *e.g.,* she was competent to make the initial decision whether to drink alcohol. She thus makes such a decision as an adult who is merely under the legal age for consuming alcohol.

■ The case of *Bradshaw v. Rawlings,* 612 F.2d 135 (3d Cir.1979) *cert. denied* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980) is instructive.[5] After characterizing

the interests of plaintiff as remaining free from bodily injury and to recover compensation, and of the college "in the nature of its relationship with its adult students, as well as an interest in avoiding responsibilities that it is incapable of performing", *Bradshaw,* 612 F.2d at 138, the court then examined the relationship between American colleges and their students:

Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. [T]he authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students. * * * College students today are no longer minors; they are now regarded as adults in almost every phase of community life. * * * As a result of [societal changes], eighteen year old students are now identified with an expansive bundle of individual and societal interests and possess discrete rights not held by college students from decades past. There was a time when college administrators and faculties assumed a role *in loco parentis.* Students were committed to their charge because the students were considered minors. A special relationship was created between college and student that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college. The campus revolutions of the late sixties and early seventies were a direct attack by the students on rigid controls by the colleges

---

**4.** While plaintiff does not assert that Lehigh is liable for having "knowingly furnished" alcohol to her, she does argue that Lehigh was negligent for not stopping underage drinking as allegedly required by the Social Policy. We find the distinction, if any, minor since in either case the negligence upon which liability is predicated is that the adult failed in its alleged duty to prevent, or assisted, drinking by underage persons. We do not find that under *Alumni Association v. Sullivan,* 524 Pa. 356, 572 A.2d 1209 (1990), Lehigh cannot be potentially liable for not stopping plaintiff's underage drinking of which it allegedly was aware.

**5.** *Bradshaw* involved a negligence claim against Delaware Valley College after plaintiff was rendered a quadriplegic when the automobile he was riding in, and driven by a fellow student, crashed. Plaintiff and the other student, both underage, consumed beer at a sophomore class picnic that was planned by class officers and their faculty advisor, who also co-signed the check later used to purchase the beer. Plaintiff argued that the college breached a duty towards him for which it was liable in negligence.

and were an all-pervasive affirmative demand for more student rights. * * * These movements, taking place simultaneously with legislation and case law lowering the age of majority, produced fundamental changes in our society. * * * Regulation by the college of student life on and off campus has become limited. Adult students now demand and receive expanded rights of privacy in the college life.... College administrators no longer control the broad arena of general morals. * * * But today students vigorously claim the right to define and regulate their own lives.

> \*     \*     \*     \*     \*     \*

Thus, for purposes of examining fundamental relationships that underlie tort liability, the competing interest of the student and of the institution of higher learning are much different today than they were in the past. [T]he change has occurred because society considers the modern college student an adult, not a child of tender years. * * * [T]he circumstances show that the students have reached the age of majority and are capable of protecting their own self interests....

*Bradshaw*, 612 F.2d at 138–40 (footnotes omitted).[6]

The Pennsylvania Superior Court has addressed, and rejected, an argument strikingly similar to the current plaintiff's argument. In *Millard v. Thiel College*, 416 Pa.Super. 475, 611 A.2d 715 (1992), decedent was an eighteen year old freshman at Thiel College who, after consuming some beer at a fraternity during the afternoon before a registered party, was killed when the motorcycle he was driving was hit head on by another motorist. Appellant Millard argued, *inter alia*, "the school aided and assisted the decedent in his consumption of alcohol by its policies and actions. * * * [A]lthough Thiel college had a longstanding alcohol policy, which policy gave rise to duty to control alcohol on its campus, [ ]

infractions of it received little or no discipline." *Thiel College*, 416 Pa.Super. at 479, 611 A.2d at 716–17.

The alcohol policy addressed therein was similar to Lehigh's Social Policy in the respect that both place responsibility upon the students, particularly the function's host. "[I]t is clear that the college also accorded certain amounts of responsibility to college students as intelligent, responsible members of society. The host of the function is charged with ensuring that the laws of the Commonwealth of Pennsylvania are complied with." *Id.* at 481, 611 A.2d at 717. (footnote omitted). This was despite the fact that the college assumed certain specific responsibilities, such as checking invitation lists and attendance numbers, and making periodic inspections. *Id.*

Appellant also argued, as does plaintiff, that the college had a special duty to control its students by implementing an alcohol policy "and undertaking to enforce it." *Id.* at 486, 611 A.2d at 720. The Superior Court held that under *Alumni Association*, a college was under no such obligation. The Superior Court concluded that

> A college may not "control" the behavior of its students as may have been possible in the past. The fact that an alcohol policy was implemented to give the college the ability to allow alcoholic beverages to those who were of legal drinking age does not give rise to a special duty to control the actions of those students who are determined to acquire intoxicating beverages, even though they are underage.

*Id.* 416 Pa.Super. at 487, 611 A.2d at 721.

As a federal district court, we are bound by the rulings from the United States Court of Appeals for the Third Circuit Court, even on matters of state law, unless or until the state's highest court has ruled. Although *Alumni Association* is such a

**6.** This description of the American college remains true today. The fact that colleges, like Lehigh, implement social "policy" rather than hard rules and in those policies vest responsibility in the students, bears witness that the relationship between college and student described in *Bradshaw* is still current.

later ruling from the state's highest court, we briefly discuss applicable Third Circuit cases. Subsequent to the decision in *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983), regarding social host liability towards minors, the Third Circuit, faced with issues similar to those now before us, had to speculate about the direction Pennsylvania courts would take. The cases of *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150 (3d Cir.1986) and *Macleary v. Hines*, 817 F.2d 1081 (3d Cir. 1987), though arguably more expansive than the Pennsylvania Supreme Court's pronouncement in *Congini*, do not direct us to a different result since the Pennsylvania Supreme Court's decision in *Alumni Association* found the Third Circuit's interpretation to be consistent with Pennsylvania law.

In *Alumni Association*, the Pennsylvania Supreme Court wrote

> We believe that [the Third Circuit's] interpretation does not offend our case law but merely restates our position that a social host must have "knowingly furnished" alcoholic beverages to a minor. * * * In both cases the Third Circuit held as potential social hosts individuals who had participated in the planning and the funding of social events where alcohol was consumed by minors. In each instance the social host was aware of the degree of consumption by the minors. [citation omitted] The Third Circuit correctly determined in both instances that we would not restrict the application of the social host theory to solely those instances where the defendant was alleged to have *physically handed* an alcoholic beverage to a minor.

*Alumni Association*, 572 A.2d at 1212–1213 (emphasis in original). The Pennsylvania Supreme Court declined to adopt a "known or should have known" standard since it would result in imposing a duty *in loco parentis* upon colleges. *Id.* The Pennsylvania Supreme Court found that the University was not involved in planning

the party, or serving, supplying, or purchasing alcohol and thus its conduct was not sufficient to find liability. To have held otherwise, would have been to impose an *in loco parentis* duty upon the university. *Id.* at 1213.

In the instant matter, we too, cannot find that Lehigh acted in a manner consistent with imposing social host liability, *i.e.*, Lehigh did not knowingly furnish alcohol, or knowingly aid or assist plaintiff's consumption of alcohol. Moreover, taken one step further as plaintiff argues it should be, even if Lehigh knowingly failed to prevent alcohol consumption, we could not, nor would we, find a duty *in loco parentis*. If we were to hold that the Social Policy created a duty to prevent Lehigh students from engaging in underage drinking, we would be finding that Lehigh was potentially liable *in loco parentis*,[7] despite clear decisions from the Pennsylvania Supreme Court that such cannot form the basis for imposing liability upon a college.

We do conclude, however, that Lehigh assumed no such duty as plaintiff construes it. The Social Policy is just that, a policy by which Lehigh hoped *all* members of its community would abide. By its very terms, responsibility for compliance with it and with state law at social functions falls upon a function's hosts. Plaintiff's assertion that "[t]he University created a system of enforcement of these parties. They took the system away from the fraternity itself and rather set up a University enforcement procedure and then failed to enforce their own rules", (Brief in Opposition at 12), is not supported by the record and goes far beyond the established facts. The Social Policy and the registration forms explicitly state, *inter alia*, that registration of a party does not constitute Lehigh University's approval of the party, and that the host is responsible for complying with applicable laws.

As to plaintiff's second argument, that Lehigh is liable under the Restatement

---

7. Such a finding would thus require Lehigh to observe a higher or stricter standard of conduct than even plaintiff's parents, who could not be held responsible without furnishing alcohol to her, who even though they knew of her underage drinking, did not apparently request Lehigh to do anything about it.

§ 318, and as the fraternities' landlord had a duty to exercise its ability to control the fraternities to prevent harm to plaintiff, we conclude that no potential liability could be imposed on Lehigh. *Thiel College,* 416 Pa.Super. at 484–88, 611 A.2d at 720–21.

## IV. CONCLUSION.

Contrary to plaintiff's argument, the facts clearly show that Lehigh did not plan or control the parties; it did not approve the parties; Lehigh did not supply any of the alcohol or even remotely assist in plaintiff's underage drinking binge. *Alumni Association,* 572 A.2d at 1213. In short, Lehigh was not a social host for the parties in question. Even if we assume that Lehigh was aware that plaintiff was drinking alcohol by virtue of its understanding that underage drinking was common on college campuses, including its own, Pennsylvania imposes no duty upon its colleges to supervise private social functions on their campuses to ensure that no underage drinking occurs. *C.f., Alumni Association,* 572 A.2d at 1211. To require Lehigh to supervise its thousands of students would render null and void the freedoms won by adult students and place Lehigh *in loco parentis.* The Social Policy was not an assumption of such a duty but rather a policy statement that supposedly responsible adult students should be aware of their own behavior. As noted above, Lehigh's position, and rightly so, was to assume that the adult students were responsible enough to make their own decisions. Lehigh, being detached from the events in question, is not responsible for the indiscretions and poor judgment of one of its underage adult students.