**Lester GRIEST, Appellant**

v.

**PENNSYLVANIA STATE UNIVER-
SITY & DICKINSON SCHOOL
OF LAW, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.

Filed April 4, 2006.

Thomas R. Davies, Lancaster, for appellant.

Crystal H. Williamson, Harrisburg, for appellees.

BEFORE: BENDER, BOWES and PANELLA, JJ.

OPINION BY BENDER, J.:

¶ 1 Lester Griest appeals from the order entered on June 7, 2005, that granted the summary judgment motion filed by Pennsylvania State University (PSU) and Dickinson School of Law (DSL) (collectively Appellees) in a suit filed by Mr. Griest wherein he sought damages from Appellees for age discrimination in employment. For the reasons that follow, we affirm.

¶ 2 We begin with a brief recitation of the facts that the parties agree are not in dispute. Mr. Griest was an employee of DSL as the Director of the Plants and Grounds Department. Shortly before the merger of DSL and PSU, Mr. Griest was asked to resign his position. Pursuant to a "Separation Agreement and General Release" (Agreement/Release), which the parties entered into, Mr. Griest's resignation became effective on June 30, 1997, although during the months of May and June of that year he was placed on administrative leave at full salary and with full benefits. Prior to Mr. Griest's signing of the Agreement/Release, DSL suggested two options for his consideration: Option A provided for a lump sum payment on the condition that Mr. Griest waive his right to seek unemployment compensation benefits, and Option B provided that Mr. Griest would not receive the lump sum payment but was free to apply for unemployment compensation benefits for which he was eligible. *See* Letter dated May 2, 1997, Exhibit A attached to Mr. Griest's original complaint, Certified Record at 8. Mr. Griest chose Option A, which specifically pro-

vided for the lump sum payment equal to four months salary to be paid on June 30, 1997, which was over and above the two months' paid administrative leave. Both parties agree that the plain language of the Agreement/Release prevents Mr. Griest from making any claims under the Pennsylvania Human Relations Act.

¶ 3 Despite having entered into the Agreement/Release, Mr. Griest, who was over the age of 40 at the time he was separated from his employment with DSL, filed charges with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Rights Commission (PHRC) alleging age discrimination. Then on March 14, 2003, Mr. Griest filed suit against Appellees alleging in Count I violations of the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S. § 955(a) ("Unlawful Discrimination Practices"), and in Count II violations of the Unemployment Compensation Law (UCL), 43 Pa.C.S. § 861 ("Certain agreements void; penalty"). Following the filing of preliminary objections by Appellees, Mr. Griest amended his complaint to eliminate Count II, i.e., the allegation of the UCL violation. Next, in addition to an answer, Appellees raised counterclaims, alleging breach of the Agreement/Release and requesting specific performance.

¶ 4 Then, on September 20, 2004, Appellees filed a motion for summary judgment, asserting that because traditional principles of contract law apply to a release, Appellees were entitled to have judgment entered in their favor. Appellees relied on the fact that both parties signed the Agreement/Release after negotiations and discussion, that the Agreement/Release was supported by valid consideration, and that the Agreement/Release specifically released Appellees from any claim that Mr. Griest may have had pursuant to the PHRA. Following oral argument and after reviewing the parties' briefs, the trial court entered an order granting Appellees' motion for summary judgment.

¶ 5 From that order Mr. Griest filed the present appeal to this Court, raising two issues for our review:

A. Did the trial court err when it held that a separation agreement and general release is valid, despite it being in conflict with both state law, 43 P.S. § 861, and federal law, 29 U.S.C. § 626(b)?

B. Did the trial court err when it granted [Appellees'] motion for summary judgment?

Mr. Griest's brief at 5.

¶ 6 Where a trial court has granted a motion for summary judgment, we are guided by the following:

As an appellate court, we are bound to consider certain principles when and under what circumstances a trial court may properly enter summary judgment. The trial court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him the benefit of all reasonable inferences to be drawn therefrom. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion[,] no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. The court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in pleadings which are uncontroverted. We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion.

Porro v. Century III Assocs., 846 A.2d 1282, 1284 (Pa.Super.2004) (quoting Millard v. Osborne, 416 Pa.Super. 475, 611 A.2d 715, 717 (1992)).

¶ 7 Mr. Griest argues that the Agreement/Release fails to meet the requirements of the Older Worker's Benefits Protections Act (OWBPA) and also violates the statutory provisions prohibiting waiver of rights to benefits under the UCL. Based on these assertions, Mr. Griest contends that the Agreement/Release is invalid, that the trial court erred by not concluding that the Agreement/Release is void as against public policy, and that as a result summary judgment should not have been granted.

¶ 8 Initially, we look to the trial court's explanation as to the basis for its decision. The court first recognized that the terms of the Agreement/Release itself barred Mr. Griest's actions in bringing the age discrimination charge to the PHRC, and then explained its decision to grant Appellees' motion for summary judgment as follows:

> [Mr. Griest] does not allege that the release was ambiguous or that it was procured by fraud, duress or mutual mistake. Rather, he contends that it is void as against public policy because it does not comply with the requirements of the Older Worker's Benefits Protections Act (OWBPA). He relies upon the decision rendered in his case by the Pennsylvania Human Relations Commission (PHRC). Holding the release to be against public policy, the PHRC stated:
>
>> Under Pennsylvania law, a release agreement which is contrary to public policy is void. *Shad[i]s v. Beal*, 685 F.2d 824 (3rd Cir.1982). We consider the policy behind the congressional enactment of the OWBPA to be sound and wholly consistent with the public good, and therefore hold that the failure of the present release to comply with OWBPA provisions renders that agreement void as against public policy with respect to the present PHRC claim. [PHRC's Interlocutory Order, 6/28/98, Exhibit A attached to Mr.

Griest's Response to DSL's New Matter, Certified Record at 55.]

There are no Pennsylvania cases which have addressed the issue before us. However, the Third Circuit has clearly held that the failure to comply with the technical release requirements of the OWBPA only voids the release as to claims made under the Age Discrimination in Employment Act (ADEA). *See Long v. Sears and Roebuck*, 105 F.3d 1529 (3rd Cir.1997), and *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281 (3rd Cir.2003). In *Wastak* the Court specifically discussed the statutory policy behind the enactment of the [OWBPA] and concluded that it did not apply to a release which only waived the "right to bring a lawsuit." 342 F.3d at 293. The *Wastak* Court went on to say:

> The statutory provisions of the OWBPA apply only to ADEA claims, and thus, the effect of the Release with regard to the state PHRA claims is "determined by the ordinary meaning of the language contained therein." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 986 ( [Pa.Super.] 1997).

342 F.3d at 295.

Prior to the enactment of the OWBPA[,] common law contract principles were applied to determine the validity of releases involving federal age discrimination claims. *See Long and Wastak, supra.* The OWBPA supplanted the common law. As the *Long* Court stated:

> . . . Congress, after grappling with the question of whether to permit ADEA waivers at all, stated unequivocally that unless the enumerated requirements are met, an individual *"may not waive"* ADEA rights. 29 U.S.C. § 626(f)(1) (emphasis added).

105 F.3d at 1539.

The instant cause of action was created by the Pennsylvania Legislature with the passage of the PHRA. We can see

no reason why the failure to comply with the technical requirements of the OWBPA should void the release of claims in this case. Since the cause of action was created by the Pennsylvania Legislature it is the prerogative of that body, not Congress or the Courts, to limit or abolish the ability to waive the claims created by it. Absent any legislative indication to the contrary, we are of the opinion that the common law should apply.

Applying the common law principles enunciated in *Strickland, supra,* [Appellees'] right to relief is clear and free from doubt. [Mr. Griest] received adequate consideration *i.e.* six months of his salary. There are no allegations of fraud, duress (financial or otherwise), or mutual mistake. The language of the contract is clear. Defendant "irrevocably and unconditionally" released [Appellees] from "any and all claims" under "the Pennsylvania Human Relations Act." Therefore, we will grant [Appellees'] motion for summary judgment.

Trial Court Opinion (T.C.O.), 6/7/05, at 2–4 (footnotes omitted).

¶ 9 We first note that the trial court only addressed whether a failure to comply with OWBPA requirements should void the Agreement/Release. It makes no mention of any allegations that a violation of the UCL occurred. This is appropriate since Mr. Griest's UCL claim set forth in Count II of his original complaint was not included in his amended complaint.[1] Thus, having deleted Count II, any argument as to whether a violation of the UCL occurred is not an issue in this case.

¶ 10 Specifically, with regard to the alleged failure of the Agreement/Release to comply with the provisions of the OWBPA, Mr. Griest argues that the trial court's reliance on *Wastak* and *Long* contradicts "Pennsylvania decisions relating to the basics of contract interpretation." Mr. Griest's brief at 11. Mr. Griest relies on section 178(1) of the Restatement Second of Contracts (1979), which provides that "a promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against enforcement of such terms." Mr. Griest also relies on *Shadis,* which states "that a contract which is injurious to the public interest may be held void even in the absence of express legislative mandates contrary to the provisions of the agreement." *Shadis,* 685 F.2d at 833 n. 15 (emphasis added).

¶ 11 Mr. Griest has not convinced this Court that the trial court's reliance on *Wastak* and *Long* is misplaced. The *Wastak* court's language could not be clearer, and as noted by the trial court "the statutory provisions of OWBPA apply only to ADEA claims, and thus, the effect of the Release with regard to the state PHRA claims is 'determined by the ordinary meaning of the language contained therein.'" *Wastak,* 342 F.3d at 295. Moreover,

1. In response to Count II of Mr. Griest's original complaint, Appellees filed preliminary objections, asserting *inter alia* that "no private cause of action [is] created or permitted under 43 P.S. § 861," and that "[e]nforcement of this and other provisions of the Unemployment Compensation Act is vested with the Department of Labor and Industry of the Commonwealth of Pennsylvania. 43 P.S. § 761." Appellees' Preliminary Objections, ¶ 17. Appellees also asserted that the only remedy allowed for a violation of 43 P.S. § 861 is criminal in nature, not civil. *Id.* at ¶ 18. Appellees additionally asserted that a "waiver" of unemployment benefits is not prohibited where an employee is given an option, *i.e.,* the employer did not "require" the employee to waive unemployment benefits in violation of 43 P.S. § 861. *Id.* at ¶ 19. Obviously, Mr. Griest agreed with Appellees' averments and filed his amended complaint deleting Count II.

just as the release in the *Wastak* case prohibited the pursuit of PHRA claims, the Agreement/Release in the instant matter likewise prohibits such claims, and without evidence of fraud, duress or other circumstances sufficient to invalidate the Agreement/Release, it is binding upon the parties. *Id. See also Davis v. Government Employees Ins. Co.,* 775 A.2d 871, 875 (Pa.Super.2001) (stating that "a release not procured by fraud, duress, or mutual mistake is binding between the parties"). Since Mr. Griest makes no such claims, we are compelled to conclude that the Agreement/Release is binding on the signatories.

¶ 12 Also, in response to Mr. Griest's contention that section 178(1) of the Restatement Second of Contracts (1979) should control, we are not aware of any provisions in the PHRA that prohibit the type of contract term at issue here. Thus, section 178(1) is not applicable. We further note that the *Shadis* decision does not mandate that a contract, even if contrary to public policy, must be held void in the absence of legislation that is contrary to the agreement's specifications. Rather the *Shadis* decision employs the word "may," allowing in effect for discretion under the circumstances of the individual case. Here, the parties negotiated and agreed to the terms of the Agreement/Release, and Mr. Griest does not allege fraud, duress or mutual mistake.

¶ 13 Accordingly, we conclude that Mr. Griest has failed to show that the trial court committed an error of law. The waiver of rights to file a claim under the PHRA as contained in the Agreement/Release is valid. Therefore, summary judgment entered in favor of Appellees was proper.

¶ 14 Order affirmed.