706 So.2d 525 (1997)
Duronne K. WALKER, Judith K. Walker and Willie Walker, Jr.
v.
PHI BETA SIGMA FRATERNITY (RHO Chapter), Phi Beta Sigma Fraternity (Gulf Coast Region), Phi Beta Sigma Fraternity, Inc. (National Fraternity), Robert Selders, Robert Washington, Byron J. Farlough, Alonzo Johnson and Arthur R. Thomas.
No. 96 CA 2345.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
*526 Lawrence J. Smith, Crystal Craddock-Posey, New Orleans, for Plaintiff-Appellants Duronne K. Walker, Judith Walker and Willie Walker, Jr.
Glen Scott Love, Dawn T. Trabeau-Mire, Baton Rouge, for Defendant-Appellee Phi Beta Fraternity, Inc. (National Fraternity).
Before GONZALES, PARRO and TYSON, JJ.[1]
RALPH E. TYSON, Judge Pro Tem.
Plaintiffs, Duronne K. Walker, Judith K. Walker, and Willie Walker, Jr., appeal from the granting of a motion for summary judgment in favor of defendant, Phi Beta Sigma Fraternity, Inc.

FACTS AND PROCEDURAL HISTORY
Duronne K. Walker (Mr. Walker) was a full-time student at Southern University in Baton Rouge, Louisiana. On or about February 25, 1992, Mr. Walker was accepted into the Membership Intake Program of Phi Beta Sigma Fraternity. Mr. Walker alleges that, during the intake process, he was physically beaten and abused by several members of the fraternity while they were conducting "hazing" intake activities. Mr. Walker further alleges that he suffered severe injuries as a result of these activities.
In March of 1993, Mr. Walker, along with Judith K. Walker and Willie Walker, Jr., filed suit in the Civil District Court for the Parish of Orleans for damages resulting from this incident. In this petition, plaintiffs named several defendants, including Phi Beta Sigma Fraternity, Inc. (National Fraternity).[2] Thereafter, plaintiffs amended the petition to add as defendants the Southern University Board of Supervisors and Rose Roche, the Director of Student Activities at Southern University.
Pursuant to a consent judgment dated February 26, 1993, this matter was transferred to the Nineteenth Judicial District Court in East Baton Rouge Parish. Thereafter, the petition was amended to reflect that Judith and Willie Walker, Jr. were the parents of Mr. Walker.
On June 23, 1993, an answer to plaintiffs' petitions was filed by several defendants, including the National Fraternity, generally denying the allegations. In addition to the *527 answer, the defendants also filed a cross-claim against several individual members of the fraternity.
The National Fraternity filed a motion for summary judgment, contending it was not personally or vicariously liable for the actions of its chapter members. After a hearing was held on January 26, 1996, the trial court rendered judgment, which granted the National Fraternity's motion for summary judgment and ordered that plaintiffs' claims as to the National Fraternity be dismissed with prejudice.
Plaintiffs now appeal from this judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618. It is well settled that the granting of summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Lewis v. Diamond Services Corporation, 93-1150, p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 825, 828, writ denied, 94-1638 (La. 10/14/94); 643 So.2d 159. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619.
In the 1997 Regular Session, the Louisiana legislature amended the summary judgment law by amending and reenacting Sections C and E of LSA-C.C.P. art. 966 and by repealing Sections F and G of the article. 1997 La. Acts No. 483. In part, the purpose of these amendments was to clarify legislative changes made to LSA-C.C.P. art. 966 in 1996 (specifically, see 1996 La. Acts, 1st Ex.Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4. These burdens of proof are stated in Section C of amended LSA-C.C.P. art. 966, as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Section 4 of Act 483 indicates that the amendments are designed to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La. 3/14/97); 690 So.2d 41. In Hayes v. Autin, 685 So.2d at 694, the court set forth the following rules regarding the burdens of proof in a summary judgment setting:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material *528 factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
The Hayes court also noted that, since its amendment in 1996, LSA-C.C.P. art. 966 has effected a substantial change in the law of summary judgment. Under previous jurisprudence, summary judgments were not favored and were to be used only cautiously and sparingly. The pleadings and supporting documents of the movant were to be treated indulgently. Further, any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. Hayes v. Autin, 685 So.2d at 694. See also Jenson v. First Guaranty Bank, 96-0381, 96-0382, p. 3 (La.App. 1st Cir. 5/9/97); 699 So.2d 403, 405. However, under the 1996 amended version of LSA-C.C.P. art. 966, the jurisprudential presumption against granting summary judgment no longer exists, and effectively, the playing field between the parties is leveled in two ways: first, the supporting documents submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Hayes v. Autin, 685 So.2d at 694.
Retroactive application of the new summary judgment law is permissible because the legislative changes made were procedural in nature. LSA-C.C. art. 6; Morgan v. The Earnest Corp., 97-0869, p. 5 (La.App. 1st Cir. 11/7/97); 704 So.2d 272, 274-75; Berzas v. OXY USA, Inc., 29,835, p. 8 (La.App. 2nd Cir. 9/24/97); 699 So.2d 1149, 1153; Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 7 (La.App. 1st Cir. 6/20/97); ___ So.2d ___, ___, 1997 WL 349023, ** 3. Therefore, we review the present summary judgment in accordance with the rules set forth in the current version of LSA-C.C.P. art. 966 and with the Hayes decision. See Berzas v. OXY USA, Inc., 699 So.2d at 1153-54.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, a Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).

LIABILITY
In order to determine whether liability exists under the facts of a particular case, plaintiff must prove
(1) the conduct in question was the cause-in-fact of the resulting harm,
(2) defendant owed a duty of care to plaintiff,
(3) the requisite duty was breached by the defendant, and
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Department of Health & Human Resources, 620 So.2d 811, 813 (La.1993).
Plaintiffs contend that the National Fraternity had a duty to prevent Mr. Walker's hazing and subsequent injuries. Specifically, plaintiffs argue that the National Fraternity recognized its duty to prevent injury to new members through its detailed membership initiation rituals and training set out in its manual. Plaintiffs argue that the National Fraternity's actions in forbidding hazing activities show a clear knowledge and former approval of these activities.
Duty is an obligation to conform to a standard of conduct associated with a reasonable person in like circumstances. Whether a duty is owed is a question of law. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848, p. 4-5 (La.App. 1st Cir. 6/24/94); 638 So.2d 1168, 1170. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993). Whether *529 or not a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. White v. State, Department of Public Safety and Corrections, Office of Motor Vehicles, 569 So.2d 1001, 1003 (La.App. 1st Cir.1990).
The evidence introduced in support of the motion for summary judgment reflects that the National Fraternity clearly prohibited any hazing activities by the fraternity chapters. Introduced into evidence was the affidavit of Dr. Lawrence Miller, the national executive director of the fraternity. According to Dr. Miller, in December of 1990, the fraternity implemented a New Membership Intake and Development Process for the purpose of a haze-free membership process.[3] Materials entitled "New Membership Intake and Development ProcessThe Guide For Chapter Training and Certification" were disseminated to all chapters for implementation. In this guide, any hazing activities in the membership selection are specifically prohibited.[4] Chapters are also required to discuss the illegality of hazing at its informational meetings during the recruiting process. Additionally, the materials advise any person who witnesses or has knowledge of a member of the fraternity conducting such activities to report it to the national executive director.
Dr. Miller further stated that all members of Phi Beta Sigma were sent a copy of this guide. Additionally, the National Fraternity also sent a Trainer's Guide to each identified certifier and trainer for each chapter who was given the task of training each member of his chapter in the New Membership Intake and Development Process.
Dr. Miller also averred that he had no knowledge of any hazing activity at the Rho chapter of Phi Beta Sigma on Southern University's campus in Baton Rouge, Louisiana. Furthermore, excerpts from the depositions of several members of the Rho chapter were introduced into evidence. These excerpts indicated that no representative of the National Fraternity was ever present at any of the alleged incidents. It was also indicated that any hazing activity, that may have occurred was purposely hidden from the National Fraternity.
Thus, plaintiffs' contention that the National Fraternity's actions in forbidding hazing imposed a duty on it to prevent Mr. Walker's injuries is without merit. See Foster v. Purdue University Chapter, the Beta Mu of Beta Theta Pi, 567 N.E.2d 865, 872 (Ind.Ct.App.1991); Millard v. Osborne, 416 Pa.Super. 475, 484-85, 611 A.2d 715, 719 (1992), appeal denied, 532 Pa. 656, 615 A.2d 1312 (1992).
Furthermore, the evidence introduced as to the internal structure of this organization reflects that the National Fraternity was not in a position to control the action of its chapters on a day-to-day basis.[5] *530 Also, the National Fraternity is located in the District of Columbia, while the local chapter is located on Southern's campus in Baton Rouge, Louisiana. See Furek v. University of Delaware, 594 A.2d 506, 514 (Del. 1991); Andres v. Alpha Kappa Lambda Fraternity, 730 S.W.2d 547, 553 (Mo.1987); Millard v. Osborne, 611 A.2d at 719-20.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, granting summary judgment in favor of Phi Beta Sigma, Inc. (the National Fraternity), is affirmed. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] Judge Ralph E. Tyson is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The other named defendants included Robert Selders, Robert Washington, Byron J. Farlough, Alonzo Johnson, Arthur R. Thomas, Phi Beta Sigma Fraternity (Rho Chapter), and Phi Beta Sigma Fraternity (Gulf Coast Region). These defendants are not parties to the instant appeal.
[3] The New Membership Intake and Development Process involved recruiting candidates, submitting an application, conducting an interview, notifying prospective members of their acceptance or rejection, educating the new member with critical knowledge about the Fraternity, and an initiation.
[4] The National Fraternity defines hazing as follows:

... any action taken or situation created intentionally or unintentionally, whether on or off Fraternity premises, to produce mental or physical discomfort, embarrassment, harassment, or ridicule. Such activities and situations include paddling in any form; creation of excessive fatigue; physical and psychological shocks; quests, treasure hunts, scavenger hunts, road trips or any other such activities carried on outside the confines of the campus or chapter house; wearing publicly apparel which is conspicuous and not normally in good taste; engaging in any public stunts and buffoonery; morally degrading or humiliating games and activities; late work sessions which interfere with scholastic activity; and any other activities which are not consistent with Fraternal law, ritual or policy or with the regulations and policies of the educational institution.
[5] According to the affidavit of Dr. Miller, Phi Beta Sigma is structured at three levels. The local chapters are responsible for functioning at the local level, planning chapter functions and running chapter operations. The regions are regional groupings of chapters by geographic proximity, with each region being a constituent of the national fraternity. The regional chapters have the power to fully organize and carry out the programs of the fraternity in their respective regions, including the establishment of additional local chapters within their region and the determination of regional dues and assessments for members. The national level is a separate corporation, based in the District of Columbia, which generally oversees the chapters at different universities across the country. The national fraternity keeps ritualistic conformity and operates pursuant to a constitution which sets forth the fraternity purposes. Such purposes include advancing the ideals of brotherhood and service, promoting education and scholarship, developing an appreciation for its culture, and fostering such programs as may be indicated by these objectives.