PETTIGREW, J.,
dissenting.
hOn January 23, 2002, a petition, erroneously captioned as a “Petition for Damages,” was filed on behalf of American Medical Enterprises, Inc. (“American Medical”)[1] in the 19th Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana. The sole defendant named therein was Audubon Insurance Company (“Audubon”). The petition demanded payment pursuant to a contract of insurance issued by Audubon that extended coverage to a building owned by American Medical (identified in subsequent pleadings as the Rusty Pelican *1025 Motel) located at 3240 Louisiana Highway 1, Grand Isle, Louisiana. The Audubon policy # CPF003823809 provided coverage to American Medical for the period January 28, 2000 to January 28, 2001. On the night of January 23, 2001, the motel owned by American Medical was damaged by fire resulting in a loss of approximately $262,000.00. American Medical alleged that despite amicable demand and submission of a proof of loss, Audubon arbitrarily and capriciously denied payment of its claim. Consequently, American Medical further set forth a demand for penalties pursuant to La. R.S. 22:658 together with attorney fees and costs.
Prior to this, on December 13, 2001, Elizabeth B. Smith, the president, director, registered agent, and principal officer of American Medical, along with Josh Booty, an employee or agent of American Medical, had been indicted in the United States District Court for the Eastern District of Louisiana on various acts of witness tampering, | ¡¡conspiracy, arson, and fraud. Later, on June 5, 2002, Mr. Booty entered a plea of guilty to conspiracy to commit arson, and to arson of the Rusty Pelican Motel.
Audubon responded by filing an answer to the civil action in state court, and later on June 14, 2002, an “Amended Answer, Counter Claim and Third Party Demand” wherein it alleged that the fire in question was arson and had been deliberately set by Mr. Booty who acted at the direction, and with the knowledge and consent, of Ms. Smith. It was also alleged that both Ms. Smith and Mr. Booty acted on behalf of American Medical for the fraudulent purpose of obtaining the proceeds of the Audubon insurance policy. Audubon further alleged that following the fire, Ms. Smith, again acting for and on behalf of American Medical, fraudulently concealed and falsely swore about the involvement of herself and Mr. Booty in setting the fire, and their actions afterwards. Audubon contended that the actions of Ms. Smith and Mr. Booty violated the terms and conditions of its policy and served as a complete defense to any claim put forth by American Medical. In the alternative, Audubon asserted that American Medical had refused and failed to cooperate by producing financial records requested by Audubon thereby voiding coverage pursuant to the policy. In the event of a judgment in favor of American Medical, Audubon put forth a demand for a credit of $137,215.99, which sum represented the amount paid by Audubon to the mortgagee named in the insurance policy.
On that same date, a jury in federal court found Ms. Smith guilty on all seven counts of the indictment on charges of conspiracy to commit arson of the Rusty Pelican, arson of the Rusty Pelican, and willfully scheming to defraud Audubon by damaging the Rusty Pelican for the purpose of obtaining the proceeds of the Audubon insurance policy.[2]
On July 13, 2002, Audubon filed a motion for summary judgment seeking a dismissal with prejudice of the claims made against it by American Medical and recognition of the indebtedness owed to Audubon by virtue of its payment of the American Medical mortgage, assignment of rights, and the recovery of the costs incurred by Audubon in investigating American Medical’s fraudulent claim. Audubon claimed that American | ¡¡Medical, Ms. Smith, and/or Mr. Booty were liable to it, jointly, severally and in solido, for the sum of $146,558.64 together with legal interest and costs.
Ms. Smith’s convictions were later affirmed by the United States Court of Ap *1026 peal for the Fifth Circuit on December 17, 2003.[3] Ultimately, the United States Supreme Court denied Ms. Smith’s application for a writ of certiorari on March 22, 2004. Ms. Smith’s convictions are now final.
On January 25, 2005, Ms. Smith filed on behalf of American Medical, a motion for summary judgment against Mr. Booty seeking payment of $273,000.00, plus judicial interest and costs as a result of his actions herein.
On March 10, 2005, Ms. Smith moved for entry of a preliminary default against Mr. Booty based upon his prior admission that he set fire to the Rusty Pelican Motel, and Ms. Smith’s claim that the evidence in the record established the nonexistence of a conspiratorial agreement between her and Mr. Booty to set fire to the motel. Accordingly, Ms. Smith prayed for entry of a default judgment against Mr. Booty. A default judgment was accordingly entered on March 14, 2005.
Following a hearing on July 18, 2005, the 19th Judicial District Court sustained Audubon’s Motion for Summary Judgment and (1) dismissed American Medical’s claims against Audubon; (2) recognized Audubon’s rights under notes and mortgage paid by Audubon; (3) granted judgment against American Medical, Ms. Smith, and Mr. Booty and (4) designated said judgment as final and appealable. A judgment to this effect was signed by the trial court on July 20, 2005. From this judgment, American Medical has appealed. The judgment is now final with respect to Ms. Smith and Mr. Booty.
In connection with its appeal in this matter, American Medical sets forth the following issues for consideration by this court:
1. Does the criminal conviction of one of the chief operating officers of a corporation act as a bar to civil litigation by the corporation arising from the same basic facts which underlie the criminal conviction?
2. Is there a genuine issue of material fact relating to American Medical’s vicarious liability for the alleged criminal acts of Elizabeth Smith?
14 This matter comes to us through a grant of summary judgment. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Coop., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., 2002-0338, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet *1027 this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854, p. 4 (La.App. 1 Cir. 3/28/08), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 2003-3439 (La.2/20/04), 866 So.2d 830. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma \ ¿Fraternity (Rho Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
The initial issue raised by American Medical questions whether the criminal conviction of one of the chief operating officers of a corporation serves to bar civil litigation by the corporation resulting from the same basic facts that underlie the criminal conviction.
In support of this issue, American Medical argues that despite Ms. Smith’s criminal conviction on charges related to the arson of the Rusty Pelican, she has steadfastly maintained her innocence, and there has never been any suggestion that her husband and fellow American Medical shareholder, Spencer Smith, was anything other than an innocent third party. Further arguing that application of the doctrine of collateral or judicial estoppel is not recognized in Louisiana, American Medical contends that “relitigation” of the arson issue is not precluded in this civil case. Audubon Insurance urges the application of collateral estoppel or the application of La. R.S. 13:4231, which codifies the doctrine of res judicata and issue preclusion in Louisiana.
Res judicata is an issue and claim preclusion device found in both federal law and state law. The purpose of both federal and state law on res judicata is essentially the same — to promote judicial efficiency and final resolution of disputes by preventing needless relitigation. Terre-bonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, 95-0671, pp. 11-12 (La. 1/16/96), 666 So.2d 624, 631. A judgment determining the merits of a case, in whole or in part, is a final judgment. La.Code Civ. P. art. 1841. The preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and bars any action filed thereafter unless the judgment is reversed on appeal. La. R.S. 13:4231, comment (d).
The doctrine of res judicata has been codified in La. R.S. 13:4231 and provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
| (i(l) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
*1028 CS) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Louisiana Revised Statute 13:4231 embraces the broad usage of the phrase res judicata to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). Mandalay Oil & Gas, L.L.C., 2001-0993, p. 9 (LaApp. 1 Cir. 8/4/04), 880 So.2d 129, 135, writ denied, 2004-2426 (La.1/28/05), 893 So.2d 72. Under claim preclusion, the res judicata effect of a final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: (1) foreclosure of relitigating matters that have never been litigated, but should have been advanced in the earlier suit; and (2) foreclosure of relitigating matters that have been previously litigated and decided. Five N Company, L.L.C. v. Stewart, 2002-0181, p. 15 (LaApp. 1 Cir. 7/2/03), 850 So.2d 51, 61.
Prior to the amendments to Louisiana res judicata law effective in 1991, Louisiana law on res judicata was substantially narrower than federal law. Terrebonne Fuel, 95-0654 at pp. 11-12, 666 So.2d at 631. The original Louisiana doctrine of res judicata was based on a presumption of correctness rather than an extinguishment of the cause of action. Leon v. Moore, 98-1792, p. 4 (LaApp. 1 Cir. 4/1/99), 731 So.2d 502, 504, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20. A decided case precluded a second suit only if it involved (1) the same parties, (2) the same cause of action, and (3) the same object |7of demand as the prior suit. Leon, 98-1792 at p. 4, 731 So.2d at 504 (citing Arbour, The Louisiana Concept of Res Judicata, 34 La.L.Rev. 763,764 (1974)).
Pursuant to La. R.S. 13:4231, as amended in 1990, effective January 1, 1991, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 2001-0993 at 9, 880 So.2d at 135. The doctrine of res judicata is not discretionary and mandates the effect to be given to final judgments. Leon v. Moore, 98-1792 at p. 5, 731 So.2d at 505.
As we have previously stated, American Medical, in the instant appeal, contends that because the doctrine of collateral es-toppel is not recognized in Louisiana and the requirements of the doctrine of res judicata are not met, the trial court’s decision granting Audubon’s motion for summary judgment should be reversed.
In response, Audubon argues that Ms. Smith’s prior criminal conviction on arson-related charges bars a subsequent civil suit by the corporation, which she served as president, to recover proceeds from its property insurer. Audubon asserts that to allow Ms. Smith’s criminal conviction to be relitigated in a civil suit seeking to recover insurance proceeds constitutes an impermissible collateral attack upon a prior conviction.
Concluding that the issue of Ms. Smith’s guilt did not have to be relitigated in the instant civil proceeding, the trial court opined:
*1029 I don’t find that there’s any issue of fact concerning whether Ms. Smith conspired to commit arson. And there were a number of cases cited on both sides, and I’m looking at the Supreme Court recently in In Re: Bankston, and that was dealing with an attorney discipline proceeding, and I’m going to quote the language from the Supreme Court. It said in an attorney disciplinary proceeding based on the lawyer’s criminal conviction, the issue of his guilt may not be relitigated because the lawyer’s conviction, whether based on adjudication case or guilty plea, is tantamount to a finding of his guilt beyond a reasonable doubt. The clear and convincing standard of proof that applies to disciplinary proceedings has already been satisfied. Thus, due process does not require a second opportunity for the lawyer to refute criminal charges. A criminal conviction, based on either an adjudication or a plea of guilty, is considered to be conclusive proof that the attorney committed the essential elements of the offense. As I indicated, although this is not an attorney discipline case, the burden Audubon would Rhave on its claim against — on its affirmative defense is by a preponderance of the evidence, much less a standard than that which is applied, beyond all reasonable doubt, in a criminal conviction. I think the same reason, the same logic that the Supreme Court applied in In Re: Bankston applies to the issue whether or not Ms. Smith’s guilt needs to be relitigated in this case. Likewise, I don’t find any issue of material fact exists regarding whether or not American Medical Enterprises [“AME”] should be liable for the act of arson committed by its president and majority stockholder. I think after reviewing the record in this case and the documents and exhibits attached to Audubon’s motion for summary judgment, AME is clearly vicariously liable for the actions of Ms. Smith. So for those reasons, the Court is going to grant the motion for summary judgment on behalf of Audubon.
Upon consideration of the oral reasons provided by the trial court in this matter, I am mindful that the Attorney Disciplinary Board is a statewide agency vested with broad investigatory and adjudicative powers that is charged to administer the lawyer discipline and disability system. La. S.Ct. Rule XIX, Section 2. I question however whether the stringent evidentiary safeguards applicable to civil court proceedings are present in attorney disciplinary proceedings. For this reason, I would decline to apply In Re: Bankston to the facts of this case.
Ordinarily, evidence is not admissible in a civil tort action to prove either that a party was charged with, or convicted of, a criminal offense arising out of the same accident. However, the usual rule is that, in the absence of a prohibitory statute, a plea of guilty in a criminal case is considered an admission against interest and is competent evidence in a civil action involving the same subject matter. Davis v. Bankston, 192 So.2d, 614, 617 (La.App. 3 Cir.1966). Although a guilty plea is admissible as relevant evidence to show fault and may be given some weight, it is not conclusive. Sutherland v. Board of Commissioners, 459 So.2d 1282, 1284 n. 3 (La. App. 1 Cir.1984). The amount of weight to be given to such plea must be determined by other evidence offered, including the reason for the plea. Jackson v. St. Pierre, 336 So.2d 261, 264 (La.App. 1 Cir.1976).
Although Ms. Smith’s prior criminal conviction is entitled to great weight and is relevant evidence to show fault on her part, it is not necessarily conclusive. I decline to say that said prior conviction is determinative of Ms. Smith’s guilt with *1030 respect to the instant civil proceeding. I also note that American Medical, the insured in the instant case, |awas not a party to the earlier criminal proceeding that resulted in Ms. Smith’s conviction. In this motion for summary judgment and at a trial of the merits, Audubon bears the burden of proof. Pursuant to La.Code Civ. P. arts. 966 and 967, Audubon must show by virtue of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits in support of its motion for summary judgment, that there is no genuine issue as to material fact and that Audubon is entitled to judgment as a matter of law.
In addition to the convictions of Ms. Smith, Audubon put forth into evidence various other exhibits in support of its motion for summary judgment. Following a thorough review of these exhibits, we conclude that Audubon carried its initial burden and produced sufficient evidence to demonstrate that there existed no genuine issue as to material fact with respect to whether Ms. Smith participated in the arson of the Rusty Pelican Motel. Pursuant to La.Code Civ. P. art. 967 B, the burden then shifted to American Medical to produce factual evidence sufficient to establish that it would be able to satisfy its eviden-tiary burden of proof at trial, thereby creating a material issue of fact. It was incumbent upon American Medical to produce evidence that Ms. Smith did not participate in the arson, rather than merely rely on a denial of the allegations against her. After a thorough review of the record and the evidence submitted on behalf of American Medical, we are forced to conclude that the evidence put forth by American Medical did not rise to a level so as to raise material issues of fact regarding Ms. Smith’s involvement in the arson of the Rusty Pelican Motel.
The second issue presented by American Medical questions whether there exists a genuine issue of material fact relating to American Medical’s vicarious liability for the alleged criminal acts of Ms. Smith. American Medical contends that Audubon has not established that Ms. Smith’s alleged role in connection with the burning of the Rusty Pelican Motel would have been in any way related to her official duties as an officer of American Medical. American Medical further contends that no evidence was presented to demonstrate that the acts allegedly committed by Ms. Smith were motivated by a desire, at least in part, to serve the interests of American Medical.
110In support of its motion for summary judgment, Audubon argues that although Ms. Smith and her husband were the sole officers and only shareholders of American Medical, it was Ms. Smith, not her husband, who dominated the corporation. In its brief to this court, Audubon argues that Ms. Smith was, and remains, president of American Medical as well as its agent for service of process. Ms. Smith signed applications for occupational licenses both before and after the fire. Following the fire, Ms. Smith mailed or caused to be mailed a claim for insurance benefits on behalf of American Medical as a result of the fire.
In pleadings before this court Audubon cites earlier admissions made by Ms. Smith in connection with an Examination under Oath conducted by Audubon pursuant to the terms and conditions of its policy. In connection with her examination under oath, Ms. Smith stated the following with respect to her corporate responsibilities:
I do the paperwork. I pay the bills. I do the cleaning. I do the painting. I do the repairs if they need it. I call for someone to repair if I can’t do it. I’ve cut the grass. I’ve weed-eated when the *1031 guy didn’t show up. Just your typical things. I order things like new sheets. Just the everyday upkeep of a motel that you would have to do.
Audubon asserts that Ms. Smith’s criminal convictions conclusively establish that Ms. Smith masterminded and orchestrated the destruction of the Rusty Pelican in an attempt to defraud Audubon. As Ms. Smith was not a named insured under the Audubon policy, she could not recover from Audubon directly, but would apparently be the person to receive the insurance proceeds on behalf of American Medical.
Audubon takes the position that recovery by American Medical would be tantamount to allowing Ms. Smith to benefit from the crimes that she committed on behalf of American Medical. As the remaining shareholder of American Medical, Audubon claims that Mr. Smith, after having allowed his wife to dominate the corporation and manage its assets, cannot now disavow her actions in order to recover the proceeds of the Audubon policy.
Accordingly, the burden to defeat Audubon’s motion for summary judgment was successfully shifted to American Medical. In order to defeat the motion for summary judgment filed on behalf of Audubon, American Medical was required to produce factual InSupport sufficient to establish that it would be able to satisfy its eviden-tiary burden of proof at trial; i.e., that as a corporation, American Medical was a juridical person with a corporate identity separate and distinct from that of its president and majority shareholder. This American Medical failed to do. American Medical’s opposition to Audubon’s motion for summary judgment was nothing more than a general denial of the fact that Ms. Smith was a party to the arson, rather than distinguishing the charges against her personally from liability on the part of the corporation that she served.
I am of the opinion the trial court was correct in its conclusion that there existed no genuine issue of material fact as to whether American Medical was vicariously liable for the actions of its president, Ms. Smith.
For the above and foregoing reasons, it is my humble opinion that the trial court’s grant of summary judgment in favor of defendant, Audubon Insurance Company, should be affirmed.

. American Medical is a corporation acquired by Elizabeth Boyette Smith and her husband Spencer Smith in 1998 from Robert Rosiere. On May 29, 1998, Mr. Rosiere purportedly transferred 1,000 shares solely to Ms. Smith. In a notarized statement dated June 3, 1998, Mr. Rosiere indicated that he transferred all the outstanding stock in American Medical to Elizabeth and Spencer Smith. Ms. Smith either owns all of the 1,000 shares of American Medical stock, or an undivided interest in all of said shares.

. U.S. v. Elizabeth Boyette Smith, No. 01-CR-348-1-N (E. Dist. of La. 6/14/2002).

. U.S. v. Elizabeth Boyette Smith, 354 F.3d 390 (5th Cir.2003).