NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0581n.06

No. 09-6033

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH SHAHEEN, | ) | |
| **Ancillary Administrator of the** | ) | |
| **Estate of Nadia Shaheen, deceased,** | ) | **FILED** |
| | ) | **Aug 31, 2010** |
| **Plaintiff-Appellant,** | ) | LEONARD GREEN, Clerk |
| | ) | **On Appeal from the United** |
| v. | ) | **States District Court for the** |
| | ) | **Western District of Kentucky** |
| **BURGESS HARRISON YONTS, *et al.*,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **LAMBDA CHI ALPHA FRATERNITY** | ) | |
| **INCORPORATED, et al.,** | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |

Before: GUY[*] and GRIFFIN, Circuit Judges; and WILHOIT, District Judge.[**]

Wilhoit, District Judge.

## OPINION

Nadia Shaheen was killed when struck by an automobile driven by Burgess Harrison Yonts,

a 20-year old member of the Lambda Chi Alpha ("LXA") fraternity at Murray State University who

was intoxicated while driving. The estate of the decedent sought to impose liability upon LXA, a

national social fraternity; its housing corporation; the individual members of the local chapter; and

---

[*] Judge Guy took no part in the consideration or decision of this case.

[**] The Honorable Henry R. Wilhoit, Jr., Senior United States District Judge for the Eastern
District of Kentucky, sitting by designation

the local alumni advisor. Plaintiff-Appellant Joseph Shaheen appeals the District Court's order granting summary judgment in favor the Defendants.

**I.**

**A.**

Around 2:00 a.m. on November 11, 2005, Nadia Shaheen, a 62-year old student at Murray State University ("MSU"), was walking home from the computer lab on campus. She lived in an apartment just off campus and she was struck by a car driven by 20-year old MSU student, Appellee Burgess Yonts. Her body was discovered in a ditch alongside of the road approximately 3/4 of a mile from the LXA house the following morning. She was pronounced dead at the scene.

On the prior evening, November 10, Yonts began drinking alcohol at his apartment with roommates and friends. He consumed a large bottle of wine or champagne as well as a bottle of Mickey's Malt Liquor while at the apartment. He then went to Nick's Sports Pub and, using a fake i.d., purchased more alcohol. After leaving Nick's, Yonts went to the LXA house on campus, where he was a non-resident member.

Thursday nights were known as party nights at the LXA house and this Thursday was no exception. At the party, Yonts consumed the alcohol he had brought with him. It is unclear where he obtained this alcohol but it is undisputed that it was not provided by the Defendants nor was it stored at the fraternity house. He drank for approximately three hours at the party.

Yonts left the party at 2:00 a.m. There is testimony that at least one of his fraternity brothers asked him if he needed a ride, but he declined and drove away to the fatal accident scene.

Although he does not recall striking Shaheen, Yonts does not dispute that he was intoxicated while driving and admits responsibility for her death. By criminal judgment entered on February 1, 2007 he was convicted of wanton murder and was sentenced to a 20 year term of imprisonment.

**B.**

On October 17, 2006, Shaheen's estate filed suit in the United States District Court for the Western District Kentucky, against Yonts, LXA, Lambda Chi Alpha House Corporation ("LXA House Corp.") and 63 individual members of the local LXA chapter at MSU for negligent supervision, negligence and various statutory violations. The Complaint was amended to bring suit against Appellee Danny Patterson, the local Alumni Advisor to the subject chapter for negligent supervision.

In two separate opinions, dated March 3, 2008 and January 13, 2009, Chief District Court Judge Thomas B. Russell granted the dispositve motions of all the Defendants and, subsequently, denied Shaheen's motion for reconsideration of his decision.

Thereafter, Shaheen filed this appeal.

**II.**

The District Court found no basis in either Kentucky common or statutory law to impose liability for the death of Nadia Shaheen upon the fraternity's national chapter, its local members, the local alumni advisor or the fraternity's housing corporation.

We review, *de novo,* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). The governing substantive law dictates what facts are material to the disposition of a claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a diversity action, the court applies the substantive law of the forum state. *Secura Ins. v. Stainless Sales, Inc.*, 431 F.3d 987, 990 (6th Cir. 2005).

## A.

### *Lambda Chi Fraternity, Inc.*

Neither the Kentucky legislature nor its courts of last resort have recognized social host liability on the part of a private social host for the negligent act of an intoxicated guest who injures a third party. To the contrary, in Kentucky, it is the intoxicated individual who bears primary responsibility for the injuries he or she inflicts. KRS 413.241(1) states:

> [T]he consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury . . .inflicted by an intoxicated person upon himself or another person."

KRS 413.241(1).[1]

Appellant seeks to create an extension to the doctrine of social host liability in Kentucky to include fraternities and their individual members. Although other jurisdictions have extended the doctrine to include fraternities, that extension has been in very limited circumstances where the fraternity either furnishes alcohol to a minor, substantially assists in the same or requires that its members attend events where underage drinking occurs.

---

[1] An exception to this rule arises in situations where a retail establishment sells alcohol to a minor or an obviously intoxicated person. *See generally Sixty-Eight Liquors, Inc. v. Colvin*, 118 S.W.3d 171 (Ky. 2003). This is known as the "dram shop rule." Obviously, it has no application here.

In *Jeffries v. Commonwealth of Pennsylvania*, 537 A.2d 355 (Pa.Super. 1988), the Superior Court of Pennsylvania, reversing, a grant of summary judgment in favor of the national chapter of a fraternity, held that the national chapter could be liable as a social host for injuries sustained by a minor after drinking at a party hosted by a local chapter if a jury concluded that the national chapter intentionally rendered substantial assistance in the consumption. *Id.* at 358-359; *see also Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150 (3rd Cir. 1986)(extending social host liability beyond those who physically serve alcohol to minors to those who intend to promote or facilitate the consumption of alcohol by minors). *Accord Alumni Association v. Sullivan*, 572 A.2d 1209 (Pa. 1990)(social host must have "knowingly furnished" alcoholic beverages to a minor to be held liable for injuries caused by the minor).

In a similar vein, courts have found social host liability where a minor was pressured or required to drink. In *Quinn v. Sigma Rho Chapter of Beta Theta Pi*, 507 N.E.2d 1193 (Ill.App. 1987), a member of the Defendant fraternity's pledge class brought a civil lawsuit against the fraternity for injuries he sustained as a result of heavy drinking during the fraternity's initiation ceremony. The Appellate Court of Illinois found that because the pledge was required to drink as part of the initiation process, the fraternity was civilly liable for his injuries. *Id.* at 1197. *See also Ballou v. Sigma Nu General Fraternity*, 352 S.E.2d 488 (S.C. 1986)(fraternity could be held liable for death of a fraternity pledge where it required attendance at "hell night" and further required the consumption of alcohol at the same).

This Court would not be bound by these opinions and, moreover, they are inapposite. There is nothing in the record that establishes a specific intent on the part of LXA to assist in underage

drinking or participate in the planning or funding of the party. Nor was there a requirement, explicit or implicit, for Yonts to come to the party, much less consume alcohol and become intoxicated.

Appellant also seeks to brand LXA with negligence. The crux of negligence is duty. As discussed *supra*, there is no duty at common law by which to impose liability upon LXA in this context. However, certain "special relationships" give rise to a duty to supervise and control. For example, the Restatement (Second) of Torts recognizes the relationship between parent and minor child, master and servant, one who takes charge of a person with dangerous propensities and mental health professionals and their patients as the type where such a duty arises. Restatement (Second) of Torts §§ 316-319 (1965).

The relevant law of Kentucky is set forth in *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005). In that case, the Kentucky Supreme Court addressed the issue of "[w]hether a special relationship exists between a national fraternal organization and one of its local chapters, as would give rise to an affirmative duty of supervision and control...." *Id.* at 850.

In *Carneyhan*, parents sued for the death of their minor child who, after consuming alcohol at a local chapter of a national fraternity, was involved in a fatal car crash. The court found that the national fraternity did not have a special relationship with its local fraternity such as to support liability under Kentucky law. *Id.* at 854. In so doing, the court discussed the contours of such a duty:

> The key in each [special relationship] is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.

*Id.* at 850 (internal citations omitted).

> [T]he relationship must include the right or ability to control another's conduct ....[T]he defendant's ability to control the person who caused the harm must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred.

*Id.* at 851 (internal citations omitted).

In its analysis of Grand Aerie's ability to control its chapters, the Kentucky court noted that the national chapter's ability to revoke a local charter was the sole instrument of control. *Id.* at 853. The court further noted the revocation would result in an outcome unrelated to the harm which occurred. *Id.* In the absence of an actual ability to control the conduct at the local chapter's social functions, no special relationship could be gleaned which would give rise to a duty. Thus, the Kentucky Supreme Court absolved the national chapter from liability by reversing the Court of Appeals and reinstating the summary judgment entered in its favor by the trial court. *Id.* at 854.

In the case at bar, both the Executive Director of LXA National, Inc., William Farkas, and other corporate representatives testified as to the structure of the relationship between LXA and its local chapters. LXA has the ability to revoke a chapter's charter as well as expel members. Although individual chapters are required to enact their own by-laws, they are expected to adhere to the rules and policies of LXA and follow the disciplinary procedures established by it. LXA appoints the alumni advisors to the local chapters. However, this is done upon a nomination of a candidate by the local chapter. Local houses submit their budgets to LXA for approval. While LXA may have had a greater role in the operation of its local chapters than exerted by Grand Aerie, its participation is still predominantly passive.

With regard to alcohol, specifically, Farkas testified that no one at the national chapter is charged with the responsibility of monitoring underage drinking at the local chapters. There is a

general policy statement regarding social welfare and alcohol. However, there are no specific rules or policies dedicated to alcohol consumption. The fraternity is expected to abide by federal, state and local law. Period. However, there is no oversight in this regard.

Following *Carneyhan*, crucial to the analysis of the relationship between the LXA and its local chapter is whether the imposition of a duty would "meaningfully reduce the risk of the harm that actually occurred." *Carneyhan*, 169 S.W.3d at 851. The concern here is the imposition of duty where the responsible party has no real means of controlling the behavior of the one supervised.[2] So, this Court must ask, assuming a special relationship giving rise to a duty existed, would it have reduced the risk of Yonts' intoxication and consequent behavior? The obvious answer is no. Yonts began drinking before arriving at the LXA house and, while there, consumed his own alcohol. He was offered a ride but declined. He acted independently from LXA.

Similarly, the Kentucky Supreme Court declined to find that the fraternity voluntarily assumed a duty to control or supervise its members. *Id.* It is axiomatic that a breach of a voluntarily assumed duty may give rise to tort liability. *Louisville Cooperage Co. v. Lawrence*, 230 S.W.2d 103, 105 (Ky. 1950). The threshold inquiry is whether the duty was "actually and specifically" undertaken. *Carneyhan* 169 S.W.3d at 847 (internal citations omitted). For the same reasons set forth *supra*, the court concluded the national organization had not undertaken an affirmative duty to supervise its local chapter.

---

[2] This line of reasoning is prominent in cases involving entities charged with responsibility of a person with dangerous propensities, such as a parolee or patient of psychotherapy. *See Estates of Morgan v. Fairfield Family Counseling Center*, 673 N.E.2d 1311 (1997) and *Division of Correction v. Neakok*, 721 P.2d 1121 (Alaska 1986).

Kentucky is not alone in its reasoning. In *Garofalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647 (Iowa 2000) the administrators of a member's estate sued following his death after an evening of excessive drinking. The court found that the national fraternity had no duty to protect Garofalo from his decision to drink following the big brother/little brother ceremony. "It neither furnished the alcohol he consumed nor forced him to consume it as a part of any recognized fraternal activity." *Id.* at 654. Due to its lack of direct participation in the event, the national chapter was not found liable for the unfortunate death. This was despite the national executive's knowledge that alcohol consumption was an important part of the fraternity's social functions and the undisputed fact that the national organization did nothing to enforce its own alcohol-related policies. *Id.*

Similarly, the Louisiana Court of Appeals held that a national fraternity did not owe a duty to the student for the actions of its local chapter. *Walker v. Phi Beta Sigma Fraternity*, 706 So.2d 525 (La. Ct. App. 1997). Duronne Walker was a student at Southern University in Baton Rouge, Louisiana. Upon his acceptance into the Membership Intake Program" of Phi Beta Sigma Fraternity, Walker alleged that he was physically abused and beaten during the "intake process." *Id.* at 526. Walker further alleged that he "suffered severe injuries as a result of these activities." *Id.* Walker named the national fraternity, Phi Beta Sigma Fraternity, Inc., as a Defendant along with the Southern University Board of Supervisors and the Director of Student Activities. The trial court granted the national fraternity's motion for summary judgment, and the Plaintiffs appealed. *Id.* at 527. The court of appeals determined that the national fraternity was "not in a position to control the action of its chapters on a day-to-day basis" because it was located in the District of Columbia, while the local chapter was located in Baton Rouge. Id. at 529-530.

In *Millard v. Osborne*, 611 A.2d 715 (Pa. Super. Ct. 1992), a Pennsylvania court ruled that a national fraternity could not be held liable for the death of a minor who was killed in a motorcycle accident after consuming alcohol at a fraternity party, finding that the national fraternity had no duty to control the actions of its members. *Id.* at 715. The court reasoned that the national fraternity simply did not have the ability to monitor the day-to-day activities of its local chapters and only had the power to discipline after the fact. *Id.*

These cases, while not binding authority, are in tandem with *Carneyhan*. Without a physical presence at the local chapter, the imposition of a duty to supervise and or control is illogical and untenable.

Shaheen also alleges that LXA violated KRS 530.070(1)(b), thereby implicitly running afoul of KRS 244.085(3), and was, thus, negligent per se.[3]

These statutes provide, in pertinent part:

> (1) A person is guilty of unlawful transaction with a minor in the third degree when:
>> ...
>> (b) He knowingly induces, assists, or causes a minor to engage in any other criminal activity;

KRS 530.070(1)(b).

KRS 244.085 provides the general prohibitions and restrictions pertaining to minors and alcohol:

> (3) A person under 21 years of age shall not possess for his or her own use or purchase or attempt to purchase or have another purchase for him or her any alcoholic beverages. No person shall aid or assist any person under 21 years of age in purchasing or having delivered or served to him or her any alcoholic beverages.

---

[3] KRS 446.070 codifies the common law concept of negligence *per se* and provides for civil liability for those in violation of statutory provisions. *See also Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000).

KRS 244.085(3).

Shaheen contends that these provisions, together, prohibit one from knowingly inducing, assisting or causing a person under the age of 21 to possess alcohol.

Even assuming Shaheen's strained amalgamation of the statutes is correct, there is no evidence that LXA knowingly induced, assisted or caused Yonts to posses alcohol. It is undisputed that he obtained the alcohol consumed by him on the night in question without the knowledge or assistance of LXA and without the use of fraternity funds. It is also undisputed that LXA did not provide alcohol, or fund the purchase of the same, for the party. Indeed, Yonts began drinking well before he arrived at the party. The fraternity was simply too remote from the facts giving rise to the accident which resulted in the death of Nadia Shaheen.

**B.**

*Individual Members*

The analysis for the claims against the individual members of the fraternity is the same as the analysis pertaining to the claims against LXA. As discussed *supra*, negating any allegation of liability is the undisputed fact that none of the members of LXA gave Yonts alcohol.

**C.**

*LXA House Corp.*

LXA House Corp. is a nonprofit organization which serves as a holding company for fraternity property. It leases space at the local Chapter premises to house various fraternity members.

Shaheen argues for an imposition of liability upon LXA House Corp. by way of the Restatement (Second) of Torts § 318.[4]  This Section provides:

> If the actor permits a third person to use land or chattels in his possession otherwise than as s servant, he is, ***if present***, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 318 (1965)(emphasis added).

It is undisputed that the  LXA House Corp. had no presence at the subject party.   There was no requirement for it to be present at social functions.   Nor did LXA House Corp. provide or otherwise furnish alcohol for it.  Indeed, there is no evidence LXA House Corp. was even aware of the party.

As discussed *supra*, the basis of a duty in this context is the extent to which LXA House Corp. controlled the day-to-day operations at the fraternity.

There is nothing in the record which suggests that LXA House Corp. had the ability or the opportunity to control the actions of the fraternity members with regard to any aspect of fraternity life.  It has no disciplinary power.  Although it could have evicted the fraternity, thereby forcing them to hold parties elsewhere, this may or may not have affected Yonts' actions as he does not reside at the LXA house.

---

[4] § 318 has been applied, repeatedly, in Kentucky. *See e.g., Grimes v. Hettinger*, 566 S.W.2d 769 (Ky. App. 1978).

**D.**

*Alumni Advisor*

At the time of Nadia Shaheen's death, Danny Patterson was the alumni advisor to the LXA Chapter at MSU, also known as the "High Pi." It is an unpaid position, elected by the local chapter and approved by LXA. He serves as the chief judicial officer for the local chapter, sitting as "judge" at the "trials" of local members facing formal charges. He is charged with imparting the views of LXA to its local chapter but the record shows that the Chapter Officers received the same information directly from the national organization. He was not required to file written reports. Nor did he have any disciplinary authority. There is nothing in policies of LXA which impose responsibility, much less liability, upon the individual, alumni advisors of its local chapters.

Shaheen's argument against Patterson is based upon the Restatement (Second) of Torts § 324, which provides:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
> > (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge.

Restatement (Second) of Torts §324 (1965).

Although not specifically adopted in Kentucky[5], § 324 finds expression in numerous Kentucky cases such as *Grand Aerie v. Carneyhan* and *Louisville Cooperage Co. v. Lawrence*, both cited *supra*. As discussed herein, the pivotal issue is whether a duty was "actually and specifically" undertaken. *Carneyhan* 169 S.W.3d at 847 (internal citations omitted).

---

[5] *See Hamilton v. Seals*, 2007 WL 2332556 (Ky. App. 2007).

Although Patterson was deemed the "chief judicial officer," at the local chapter, he had, in fact, no disciplinary authority over the members. His role appears to be essentially ceremonial and his ability to control the day-to-day events at the fraternity nonexistent.

There is no evidence that Patterson "actually and specifically" undertook a duty to supervise or control the LXA members. Although he sat in an advisory position, he did not occupy a supervisory position; a distinction which is dispositive in this case.

Moreover, Patterson was not present at the subject party. Nor did he furnish alcohol for the same. Indeed, there is no evidence that was even aware of this specific gathering.

## III.

Pursuant to CR 76.37(1)[6], Appellant has moved the Court to certify the pivotal issues of this appeal to the Kentucky Supreme Court. We decline, however, to do so. Appellant failed to request certification when the case was before the district court. Late requests for certification are disfavored. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir.

---

[6] Kentucky's Rules of Civil Procedure provide for the certification of questions of law. Specifically, CR 76.37(1) states:

> If there are involved in any proceeding before the Supreme Court of the United States, any Court of Appeals of the United States, any District Court of the United States, the highest appellate court of any other state, or the District of Columbia, questions of law of this state which may be determinative of the cause then pending before the originating court and as to which it appears to the party or the originating court that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state, the Kentucky Supreme Court may answer those questions of law when certified to it by the originating court, or after judgment in the District Court upon petition of any party to the proceeding.

CR 76.37(1).

2009)(declining to certify in part because moving party "failed to request certification . . . when the case was before the district court"). Indeed, we find the motion untimely.

Further, at least one circuit court has recognized that certification is not favored when the moving party chose the federal forum, as Appellant did in this case. *See Cantwell v. University of Mass.,* 551 F.2d 879, 880 (1st Cir. 1977)("[O]ne who chooses the federal court chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification. We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort.")

Moreover, certification is not appropriate here. This procedure is reserved for cases which present a novel or unsettled question of state law. *See Pennington*, 553 F.3d at 450 (internal quotation marks and citation omitted) ("Certification is most appropriate when the question is new and state law is unsettled."). Where state law provides sufficient guidance to allow...a clear and principled decision" a request for certification of law may be denied even if it is a question of first impression under state law. *Id.*

Appellant's contention that there are "unresolved questions of state law" and an "absence of controlling Kentucky precedent" with which to adjudicate this case is without merit. In *Carneyhan,* the Kentucky Supreme Court declined to extend social host liability to the national fraternal organization, going into detail its reasoning for doing so. There is no indication within that opinion, or elsewhere in existing law, that the Kentucky court would impose social host upon the individual members under these circumstances.

We are mindful that in the context of a request for certification, the state court need not have addressed the exact question at issue, so long as well-established principles exist to govern a

decision. *Id.* at 450*, citing Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).[7] *See also*

*Transamerica Insurance Company v. Duro Bag Manufacturing Company*, 50 F.3d 370 (6th Cir.

1995).

We find that the existing caselaw addressing social host liability provides guidance to allow

us to make a clear and principled decision and Appellant's Motion for Certification is denied.

**IV.**

For these reasons, we hold that Defendant-Appellees bear no liability for the death of Nadia

Shaheen and AFFIRM the judgment of the District Court.

---

[7] The Tenth Circuit noted:

> [F]ederal courts 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'

*Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).